HENDERSON W. TIMBERLAKE, Respondent, v. DANIEL HUGHES, Appellant; JOHN R. ROSS, Respondent.

Kansas City Court of Appeals, March 23, 1896.

Contribution : CODEBTORS: EVIDENCE. The evidence in this case is reviewed and a written declaration of trust between the parties considered, and appellant is *held* to be liable as a codebtor to contribute to the respondents.

*Appeal from the Clay Circuit Court.*—HON. E. G. BROADDUS, Judge.

AFFIRMED.

*Martin E. Lawson* and *James E. Lincoln* and *Karnes, Holmes & Krauthoff* for appellant.

(1) Equity cases are practically triable *de novo* in the appellate court. *Blount v. Spratt,* 113 Mo. 48. And the appellate court will review the facts as well as the law. *Felton v. Gregory,* 104 Mo. 488; *Griesedieck v. Griesedieck,* 56 Mo. App. 94; *Finley v. Schlueter,* 54 Mo. App. 455; *Clark v. Bank,* 57 Mo. App. 277; *McElroy v. Maxwell,* 101 Mo. 294 (308); *Benne v. Schneck,* 100 Mo. 250; *Lins v. Lenhardt,* 127 Mo. 271. And while the court will defer to the findings of fact of the lower court in a measure, it is not bound by its finding of facts, nor by its conclusions of law thereon, but exercise a supervisory control over both. *Blount v. Spratt, supra.* (2) The rights of the parties must be deduced from their intention, as shown by their agreement taken in the light of surrounding circumstances. It is well settled that the mere participation by one in the profits of a transaction or business does not *per se* constitute him a partner therein. *McDonald v. Matney,* 82 Mo. 358; *Newspaper Company v. Farrell,* 88 Mo. 594; *Thompson v. Holden,* 117 Mo. 118. (3) A mere participation in profit and loss will not constitute a partner *inter sese.* It is a question of fact to be determined upon all the circumstances proved. *McDonald v. Matney,* 82 Mo. 358; *Newspaper Co. v. Farrell, supra; Bank v. Outhwaite,* 50 Mo. App. 124; *Deyerle & Porter v. Hunt & Hunt,* 50 Mo. App. 541; *Donnell v. Harshe,* 67 Mo. 172; *Kelly v. Gaines,* 24 Mo. App. 506; *Thayer v. Augustine,* 55 Mich. 187; *Harvey v. Childs,* 38 Ohio St. 319; *McDonald v. Matney,* 82 Mo. 358, 366; *Thompson v. Holden,* 117 Mo. 118, 128. (4) To constitute a partnership each partner must have the right to manage the whole business and to

dispose of the entire property involved in the enterprise in the same manner as all can when acting together. *Ashby v. Shaw*, 82 Mo. 76; *Bank v. Outhwaite*, 50 Mo. App. 124; *Deyerle v. Hunt*, 50 Mo. App. 541. (5) One receiving share of profits and not being liable for losses is not a partner. *Gill v. Ferris*, 82 Mo. 156; *Deyerle v. Hunt, supra*.

*Simrall & Trimble* and *Sandusky & Sandusky* for respondent.

(1) "The doctrine of contribution as the result of general equity based on the ground of equality of burden and benefit, is equally applicable between principals as between sureties, and has been adopted as a rule of common law in this state." *Van Petten v. Richardson*, 68 Mo. 379. (2) This is an action by one principal against his coprincipals for contribution. The petition is framed upon this theory. It does not contain a single word about partnership. If the parties engaged as principals in a joint enterprise, and the plaintiff put in more than his proportion of the money to be invested, he is entitled to contribution. Whether they were partners or not is wholly immaterial. The parties to this suit, and one O. M. Towner, did, by written contract, agree to furnish equally the money to buy options on mineral lands in Jasper county, Missouri, and to share equally the losses, and respondent furnished more than his proportion of the money. Whether or not this agreement constituted them partners is an immaterial inquiry. We must, therefore, ask to be excused from going into this question. (3) The court will discover from appellant's brief that the real controversy in this case is the question of fact: Was the court below justified by the evidence in arriving at the judgment it rendered? This is in fact the only question involved in this case.

SMITH, P. J.—This is an action for contribution by one debtor against his codebtors.

The petition in substance alleged that the plaintiff and the defendants, Hughes and Ross, and one Towner, agreed among themselves to purchase certain lands, leases, and options on land in Jasper county, in this state, and to furnish equally the money for making such purchases and to share equally the profits arising therefrom; that the purchases and sales were to be made by Towner, who was to be the active manager of the business; that in pursuance of the agreement so entered into, large sums of money were delivered to Towner to be used, and were so used, by him under the agreement, which said sums were borrowed from a certain bank, of which defendant Hughes was president, and for which sums, Towner, plaintiff, and defendant Ross executed their notes. It was further alleged that all of said notes had been paid off by plaintiff and defendant Ross, and that no part thereof had been paid by either Towner or defendant Hughes, the former being insolvent. It was further alleged that the undertaking of the parties had failed and that nothing had been realized therefrom. The prayer was for an accounting to be taken of all the moneys contributed toward said undertaking and of the amount contributed by each party thereto and of the amount due plaintiff by each of the defendants, and for judgment for the amounts so found due plaintiff in such accounting, etc.

The answer was a general denial. The court found the issues for the plaintiff and, under an order, sent the case to a referee to determine the sums of money to be contributed by defendants in equalizing the loss, etc. There was a report by the referee, in accordance with the order of reference, which was confirmed by

the court and judgment given accordingly, from which defendant Hughes has appealed.

It was conceded by counsel on either side, in the oral argument here at the bar, that there was not a single proposition of law arising on the record in the case, over which there was any serious controversy. The ground upon which the defendant Hughes, by his appeal, assails the finding and judgment is that the evidence presented by the record is insufficient to uphold the same. The pivotal question of fact in the case to be determined by us is whether Towner, plaintiff, and defendants entered into the agreement to engage in the purchase and sale of options on mineral lands, as alleged in the plaintiff's petition. It must be conceded at the outset that the solution of this question is not free from difficulty on account of the many very material conflicts in the testimony. After reading the testimony of Towner, Lincoln, plaintiff, and defendant Ross, it is impossible to reach any other conclusion than that Towner, plaintiff, and the defendants entered into the agreement to speculate in options on mineral lands. It indubitably appears that these parties met and conferred together in respect to the venture; and that, as a result of such conference or conferences, Towner engaged Judge Lincoln to prepare a writing which is termed by some of the parties a "declaration of trust" and by others, "a contract;" which declared, *first*, that Towner had purchased and contracted for certain real estate; *second*, that when all of said purchases and leases were perfected, they were to organize one or more companies, with an amount of capital, etc., to be agreed on; *third*, that plaintiff and defendants had each contributed one fourth of the means whereby said purchases and contracts had been made; *fourth*, that all the money used in the said purchases and contracts was that of the

plaintiff, defendants, and Towner, in the proportion of
one fourth each, and that all the purchases, leases, and
contracts made by said Towner, were to be used in
trust for such parties in the proportion above specified;
*fifth*, that "the aim, intent, and meaning, of this decla-
ration, being, that I, the said Towner, in all deals,
contracts and purchases made in and about Joplin and
in Jasper county, Missouri, am to hold all such prop-
erty and properties and contracts and leases for myself
and the said Timberlake, Hughes, and Ross, in equal
proportions. The said Timberlake, Hughes, and Ross,
having furnished the money for such deals, made and
to be made, in the proportions aforesaid."

The writing thus prepared was read over to all the
parties therein named and none of them made any
objection to the same, but instead thereof impliedly
assented to the recitals therein. If it had not truly
recited their contractual relations, why was no objec-
tion made? If defendant Hughes was not equally
interested in the venture with the others, and to the
extent declared in the writing, why did he not say so
when Lincoln read the same over to him and his asso-
ciates? If the writing did not state truly the extent of
of his rights and liabilities thereunder, why did he,
after being advised of its recitals, accept and retain the
same? It is quite true that his testimony in respect to
the circumstances leading up to and surrounding the
preparation and acceptance of the writing is at variance
with that of Towner, Lincoln, plaintiff, and defendant
Ross; yet we are unable to discover anything in the
record that would justify us in accepting as true the
testimony of the former, and rejecting that of the latter
as untrue. In so far as we can see, all of the parties,
with the possible exception of Towner, are respectable
citizens, of equally high standing in the community in
which they live. The plaintiff and defendants were

each alike pecuniarily interested in the result of the suit. Judge Lincoln, aside from Towner, was the only one of the witnesses who had no pecuniary or other interest in the result of the suit. He it was who testified that he read over the writing to the defendant Hughes, which circumstance is not remembered by the latter. If the testimony of defendant Hughes is accorded equal weight with that of Towner, plaintiff, and Ross, that of the latter three must be held to outweigh the former, when that of Judge Lincoln is cast into the scale.

It appears from the undisputed evidence that the next day after the writing had been prepared by Judge Lincoln, and impliedly accepted by all the parties as the charter by and under which the joint venture was to be conducted, a note was given by Towner, plaintiff, and Ross, to the bank of which defendant Hughes was president, for the purpose of raising money for the prosecution of such venture. It appears that the defendant Hughes did not sign the note, and this circumstance is relied on by him as showing that he was not in the joint venture on an equal footing with the other parties. If this bare circumstance alone appeared, without explanation, then we should consider such circumstance of much significance; but when we take into consideration the testimony of both plaintiff and defendant Ross, which is to the effect that the defendant Hughes excused himself from signing the note on the ground that he was an officer of the bank making the loan, but at the same time saying that the "contract" (no doubt meaning the writing prepared by Judge Lincoln, which he then held in his hand) would show who the parties to the contract were, the fact that defendant did not sign the note becomes of no significance. It appears that with this assurance, and the interpretation placed upon the writing by the

defendant Hughes himself, the other parties yielded their acquiescence in defendant Hughes' not signing the note with them. Accepting the testimony of the plaintiff and defendant Ross as true, as we think we should, we are not inclined to accord any controlling significance to the fact that defendant Hughes did not sign the note. And for a like reason we are unwilling to attach any importance to the further admitted fact that the defendant Hughes was not requested and did not sign any of the other notes, or the renewals thereof, given by the parties to said bank.

It appears that during the time the options purchased by Towner for himself and associates were running, he went to New York for the purpose of there disposing of the same at a profit; but after vainly endeavoring to do so in various ways, such options expired and the result was that all the money that had been invested in them was lost and the venture came to naught. It further appears that after the venture had failed, plaintiff and defendant Ross thought that the parties thereto could still get out without loss, if a certain tract of mineral land purchased by Towner, but not entirely paid for, could be saved. So they accordingly communicated their opinion to defendant Hughes and also proposed to him that if he would let them have money enough to complete the payment of the purchase price for the land, "he could step out of the deal." This proposition he declined, saying that he was out of the deal and could not be held responsible. This seems to have been the first intimation given out by him that he did not consider himself in the venture, or bound for the payment of the money that had been borrowed to carry it on. It is not, therefore, strange that the plaintiff and defendant paid the bank the notes that they, with Towner, had made to it, without calling on him to pay his proportion of the same.

Why call on him to pay a debt for which he had already declared his nonliability? They took the only course left open to them and that was to pay the debts of the venture, for the payment of which they had obligated themselves by their notes, with the understanding with defendant Hughes already adverted to, and when paid, to bring their action for contribution.

Regarding the so-called declaration of trust as embodying the agreement between the parties therein named, as we must, for the reasons already stated, in connection with the evidence showing how and why the note given for the money to carry on the venture was signed by Towner, plaintiff, and defendant Ross, without the other defendant, Hughes, joining therein; and it seems to us that the conclusion must be irresistible that the defendant Hughes, both in morals and in law, is a codebtor of the other parties to said agreement and liable to them for his proportionate share of the said money paid by them for him and should be adjudged to make contribution accordingly.

The theory of the defendant that he had no connection with the said option venture, further than that he was to allow the other parties the use of his name, in consideration of which he was to participate in the profits, if any, has been very ingeniously and plausibly presented by his learned counsel, but when examined in the light reflected by all the facts and circumstances disclosed by the evidence, it can not, in our opinion, be sustained.

It results that the judgment of the court must be affirmed. All concur.